IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM R. TINNERMAN,                    Case No. 3:19-cv-1429-TJC-PDB

        Plaintiff,

    v.

THE UNITED STATES,

        Defendant.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL;**

**INJUNCTIVE RELIEF SOUGHT**

With leave of this Court granted under Federal Rules of Civil Procedure, Rule 15(a)(2) (Order, ECF 28), Plaintiff, William R. Tinnerman, submits this First Amended Complaint consisting of four separate claims for relief ("Claim" and, collectively, "Claims").  In the First Claim, Mr. Tinnerman seeks judicial review of, and equitable relief from, certain agency administrative actions that are governed by the Administrative Procedures Act ("APA").[1]  In the Second Claim, Mr. Tinnerman seeks declaratory, injunctive, and other relief in the nature of mandamus,[2] from the erroneous certification of "seriously delinquent tax debt" by the Commissioner of Internal Revenue ("Commissioner") to the Secretary[3] and by the Secretary to

---

[1]  The APA currently comprises §§ 551-559, and all of Chapter 7, of Title 5 of the U.S.C.

[2]  *See* 28 U.S.C. § 1651 ("…all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law") and 28 U.S.C. § 1361 (giving federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff").

[3]  As used herein, the term "Secretary" has the same meaning as is prescribed by § 7701(a)(11)(B), *i.e.,* the Secretary of the Treasury or his delegate.

the Secretary of State, as provided in § 7345,[4] including the Court's determination of "whether the certification was erroneous" and "whether the Commissioner has failed to reverse the certification" as required by § 7345(e)(1), and a prompt reversal of the certification in accordance with §§ 7345(c) and (e)(2). In the Third Claim, Mr. Tinnerman seeks to recover sums that were erroneously or illegally assessed as taxes for 1999. In the Fourth Claim, Mr. Tinnerman seeks to recover sums that were erroneously or illegally assessed as taxes for 2000.

In support of the Claims, Mr. Tinnerman alleges as follows:

## PARTIES

1.      Mr. Tinnerman is a citizen of the United States of America by birth to lawful residents of the State of Wisconsin, and he has been a resident of the State of Florida since 1972.

2.      As permitted by 5 U.S.C. § 703, "the United States" is named as the defendant in the First Claim.  Furthermore, within the First Claim, each of the Department of the Treasury ("Treasury")  and the Internal Revenue Service ("the IRS") is the defendant's "agency," as that term is defined by 5 U.S.C. § 701(b)(1).  As required (i) by § 7345(e) and (ii) by 28 U.S.C. §§ 1331, 1346(a)(1) and 2402, "the United States" is named as the defendant in the Second, Third and Fourth Claims.  For ease of reference, and to provide specificity, the defendant also is referred to, throughout this First Amended Complaint, as "the IRS."

## JURISDICTION AND VENUE

3.      Because every Claim rests upon no less than a Constitutional right (such as the right to due process), every Claim presents a federal question under 28 U.S.C. § 1331, which confers on district courts subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."

---

[4]  Except as otherwise indicated, all statutory section ("§") references are to sections of Title 26 of the current edition of United States Code ("U.S.C.").

4.      Further, this Court has subject matter jurisdiction as a result of Congress's waiver of the United States's sovereign immunity against suit (a) in the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, which establishes a general waiver of sovereign immunity and creates a right of judicial review "in a court of the United States" of legal wrong suffered because of agency action, (b) in § 7345(e), for determination of whether the certification of "seriously delinquent tax debt" by the Commissioner and the Secretary to the Secretary of State was erroneous and whether the Commissioner, the Secretary, and the Secretary of State wrongly failed to reverse such certification, empowering the Court to "order the Secretary to notify the Secretary of State that such certification was erroneous," (c) in 28 U.S.C. § 1346(a)(1), in actions "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws," provided, as required by § 7422(a), that a claim for refund, including an IRS Form 1040X, has been duly filed according to the relevant provisions of law and Treasury regulations, including 26 CFR § 301.6402-3(a)(5); and, alternatively, (d) in 28 U.S.C. § 1346(a)(2) in claims against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, . . . , or for liquidated or unliquidated damages in cases not sounding in tort.

5.      Thus, as further set forth below, Congress has waived the sovereign immunity of the United States against, and this Court has subject matter jurisdiction over, every Claim.

6.      All Claims are timely under 28 U.S.C § 2401(a).

7.      Venue is proper under 28 U.S.C. §1402(a)(1) because Mr. Tinnerman resides within the Middle District of Florida, Jacksonville Division.

## FACTS

8.    As further alleged below, Mr. Tinnerman has complied with all relevant Internal Revenue Code ("IRC") requirements for substantiation of items, and has maintained all records required under the IRC and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews.

9.    Every amount at issue in the Claims involves the IRS Schedule K-1 (1120S), and the information set forth therein or provided in connection therewith, that an "S corporation," as that term is defined in § 1361(a)(1), of which Mr. Tinnerman was a shareholder (the "Company") issued to Mr. Tinnerman and filed with the IRS for every year at issue in the Claims.  (As to each year, "Schedule K-1 for ___"; collectively, "Schedules K-1.")

10.    Because the Company was an S corporation for every year at issue in the Claims, for each of those years the Company filed an IRS Form 1120S on which it reported various amounts, but on which there was not any tax due.

11.    The IRS maintains an "Account Transcript" for Mr. Tinnerman for every year, including every year at issue in these Claims.  The Account Transcript codes and details in the account any information that the IRS receives pertaining to transactions and events. Since 2003, the IRS posted to Mr. Tinnerman's account, based on information that he and others provided to the IRS, Transaction Code (TC) 590 – "Satisfying transaction. Not liable this tax period," with a zero dollar ($0.00) balance shown. *See* I.R.M. § 5.1.11.8.3 (11-29-2011) No Return Secured Taxpayer Not Required To File For This Period Only ("generates a TC 590"). A genuine copy of Mr. Tinnerman's Account Transcripts as of June 29, 2016 for all of 2003 through 2015 is attached hereto as composite **Exhibit A**.

12.     During the years at issue, other than the two that are explained in ¶ 16 below, Mr. Tinnerman received no money or property distribution from any source other than from the Company.

**2010.**

13.     On or about June 4, 2012, Mr. Tinnerman received from the IRS a Notice CP59 stating "You didn't file a Form 1040 tax return" for 2010. A genuine copy of the Notice CP59 for 2010 is attached hereto as **Exhibit B**.

14.     In response to the Notice CP59 for 2010, Mr. Tinnerman, in a letter to IRS Austin, TX that he mistakenly dated May 30, 2012 instead of June 30, 2012 ("Plaintiff's Letter/2010"), pointed out that the amounts shown in Box 2 and Box 16B of his Schedule K-1 for 2010 were the same, and he explained (i) that the amount shown in Box 16B was a tax exempt item, and (ii) that the "Shareholder's Instructions for Schedule K-1" instructed not to include it in income on a tax return. Plaintiff's Letter/2010 concludes that, because the only 2010 amounts that had been reported to the entity account number ("EAN") for Mr. Tinnerman were the amounts shown on his Schedule K-1 for 2010, Mr. Tinnerman had no taxable income in 2010, and he was not required to file a return for 2010.  A genuine copy of Plaintiff's Letter/2010, along with the Schedule K-1 for 2010 and an excerpt from the IRS's "Shareholder's Instructions for Schedule K-1" that were enclosed therewith are attached hereto as composite **Exhibit C**.

15.     The IRS replied to Plaintiff's Letter/2010 with a letter entitled LTR 2283C dated July 13, 2012, from IRS Austin, TX pertaining to 2010 ("IRS Letter/2010"). A genuine copy of the IRS Letter/2010 is attached hereto as **Exhibit D**. The IRS Letter/2010 agreed with Mr. Tinnerman that **no** return was required to be filed for 2010, stating: "*We have closed your account shown above based on the information you provided about your filing requirements.*"

**2011 and 2012.**

16.     Mr. Tinnerman timely filed an IRS Form 1040 for each of 2011 and 2012, and he timely paid the taxes shown thereon to be due because, from  April, 2011 through July, 2012, Mr. Tinnerman received compensation in connection with his role as a representative of the debtor in possession in a proceeding before a U.S. Bankruptcy Court.

17.     On or about June 17, 2013, Mr. Tinnerman received from the IRS a Notice CP2000 that proposed changes to his Form 1040 for 2011 totaling $18,033. In response to this notice, Mr. Tinnerman sent to the IRS a letter dated June 24, 2013 ("Plaintiff's Letter/2011") in which he pointed out that the amounts shown in Box 2 and Box 16B of his Schedule K-1 for 2011 were the same and in which he explained (i) that the amount shown in Box 16B was a tax-exempt item, and (ii) that the "Shareholder's Instructions for Schedule K-1" instructed not to include it in income on a tax return. Plaintiff's Letter/2011 also pointed out that this treatment was consistent with the IRS's earlier determination that is set forth in IRS Letter/2010 (*see* ¶ 15). Plaintiff's Letter/2011 concluded that no additional amounts were due for 2011.  A genuine copy of Plaintiff's Letter/2011, with its relevant enclosures (the Notice CP2000, the Schedule K-1 for 2011, and excerpts from the IRS's "Shareholder's Instructions for Schedule K-1"), is attached hereto as composite **Exhibit E**.  Plaintiff's Letter/2011 also enclosed a copy of Plaintiff's Letter/2010 and a copy of the IRS Letter/2010 (*see* ¶¶ 14 and 15).

18.     On or about August 26, 2013, the IRS sent a notice entitled CP2005 pertaining to 2011 ("IRS Notice/2011") in response to Mr. Tinnerman's explanation in Plaintiff's Letter/2011. In the IRS Notice/2011, the IRS agreed to $0.00 of tax due, and closed the inquiry. Attached hereto as **Exhibit F** is a genuine copy of the IRS 2011/Notice, which states, in part, "*Amount*

*due: $0.00 … We're pleased to tell you that the information you provided resolved the tax issue in question and that our inquiry is now closed.*"

19.     Although Mr. Tinnerman never received any communication from the IRS pertaining to 2012, the communication between the IRS and Mr. Tinnerman pertaining to 2011 that is described in ¶¶ 17 and 18 above is equally relevant to 2012 because the entirety of Mr. Tinnerman's circumstances for each of those years was identical to that of the other.

## **2013 and 2014.**

20.     On or about March 28, 2016, Mr. Tinnerman received from the IRS Austin, TX campus an IRS Notice CP59 ("You didn't file a Form 1040 tax return") pertaining to 2014.  A genuine copy of the IRS Notice CP59 for 2014 is attached hereto as **Exhibit G**.

21.     In response to the Notice CP59 for 2014, Mr. Tinnerman, in a letter to IRS Austin, TX dated March 30, 2016 ("Plaintiff's Letter/2014"), pointed out that the amounts shown in Box 2 and Box 16B of his Schedule K-1 for 2014 were the same, and he explained (i) that the amount shown in Box 16B was a tax-exempt item, and (ii) that the "Shareholder's Instructions for Schedule K-1" instructed not to include it in income on a tax return. Plaintiff's Letter/2014 concludes that, because the only 2014 amounts that had been reported to the EAN for Mr. Tinnerman were the amounts shown on his Schedule K-1 for 2014, Mr. Tinnerman had no taxable income in 2014, and he was not required to file a return for 2014. A genuine copy of Plaintiff's Letter/2014, along with the Schedule K-1 for 2014 and an excerpt from the IRS's "Shareholder's Instructions for Schedule K-1" that were enclosed therewith are attached hereto as composite **Exhibit H**.

22.     On or about July 14, 2016, Mr. Tinnerman received from the IRS—but not in response to Plaintiff's Letter/2014—correspondence entitled LTR 2269C pertaining to 2013,

2014 and 2015 ("IRS Letter/2013-2015"), in which the IRS indicated that it had not received a return from Mr. Tinnerman for any of those three years.  A genuine copy of the IRS Letter/2013-2015 is attached hereto as composite **Exhibit I**.

23.     On August 1, 2016, Mr. Tinnerman replied to the IRS Letter/2013-2015 regarding each year mentioned therein ("Plaintiff's Letter/2013-2015"). Among other things, Plaintiff's Letter/2013-2015 made reference to Plaintiff's Letter/2014 to which the IRS had not responded. A genuine copy of Mr. Tinnerman's reply, without enclosures, is attached hereto as **Exhibit J**.

24.     On or about August 25, 2016, the IRS sent from its Austin, TX campus to Mr. Tinnerman correspondence entitled LTR 2358C pertaining to 2013 and 2014 ("IRS Letter/2013-2014") in which it agreed, based on the information that Mr. Tinnerman had provided in his Plaintiff's Letter/2014 (*see* ¶ 21) and in his Plaintiff's Letter/2013-2015 (*see* ¶ 23), that Mr. Tinnerman was not legally required to file a return for either of those two years. The IRS Letter/2013-2014 stated, "*Based on your information, we agree that you aren't legally required to file a tax return for the above tax period(s).*" A genuine copy of the IRS Letter/2013-2014 is attached hereto as **Exhibit K**.

## FIRST CLAIM FOR RELIEF

### (Judicial Review Under APA of Administrative Agency Action)

25.     Mr. Tinnerman re-alleges and incorporates by reference, as if fully set forth under this First Claim, every allegation set forth above.

26.     On December 31, 2003, Mr. Tinnerman filed a written protest of the examinations report of Revenue Agent Lynda Mosca a/k/a Lynda Morgan, I.D. #65-02266, Office SBSE/1522 (hereinafter referred to as "R.A. Mosca") which proposed a deficiency for each of 1999, 2000, and 2001. On November 8, 2004, Mr. Tinnerman filed a similar protest of the examinations report of Ms. Emery, I.D. #0462424400, Ogden, UT which proposed a deficiency for 2002, and

he also requested a hearing with the IRS Office of Appeals ("Appeals hearing").  A genuine copy of both these written protests and request for an Appeals hearing ("Protest Letters 1999-2002") is attached hereto as composite **Exhibit L.**  Mr. Tinnerman desired an administrative resolution and determination of the issues and the opportunity to bring any adverse determination before a U.S. District Court under the APA for review of that agency action, rather than to petition the United States Tax Court.

27.     On February 3, 2004, R.A. Mosca and her Small Business/Self-Employed ("SB/SE") manager, in violation of Mr. Tinnerman's right to due process of law, denied Mr. Tinnerman's request for an Appeals hearing ("Hearing Denial/1999-2002") in part on the ground that the IRS had decided to ignore the Office of Appeals' ruling on October 5, 1993 that already had determined the correct amount of Mr. Tinnerman's basis in his stock in the Company.  *See* ¶ 33 below. A genuine copy of the "Hearing Denial/1999-2002" is attached hereto as part of composite **Exhibit M.**

28.     On or about February 20, 2004, the IRS SB/SE Division, again in the person of R.A. Mosca, prepared and submitted to Mr. Tinnerman for his signature a "delinquent" or substitute for return comprised of an IRS Form 4549A for each of 1999, 2000, and 2001 ("SFR" and "SFRs").

29.     Mr. Tinnerman declined to execute any of the SFRs.

30.     On or about October 28, 2004, the SB/SE Division of the IRS, this time in the person of Ms. Emery, also prepared and submitted to Mr. Tinnerman for his signature an SFR for 2002.

31.     Mr. Tinnerman also declined to execute the SFR for 2002**.**

32.     The SFR for each of 1999, 2000, 2001, and 2002 asserted, among other things,

that Mr. Tinnerman was required by law to file an IRS Form 1040 for that year.

33.    Instead of executing any of the SFRs, Mr. Tinnerman disputed and rebutted every amount that was set forth on the SFRs, including the alleged amount of his basis in his stock in the Company because the correct amount thereof already had been determined by the IRS Office of Appeals, which determination was not reviewable as a result of the IRS Letter of Agreement and the IRS Form 870-AD dated October 18, 1993 – *see* IRM 1.2.1.9.3 (01-05-2007) – Policy Statement 8-3, ¶ 5.  A genuine copy of the IRS Letter of Agreement and of the IRS Form 870-AD dated October 18, 1993 are attached hereto as **Exhibit N.**

34.    After Mr. Tinnerman declined to execute any of the incorrect SFRs, the IRS prepared and issued to Mr. Tinnerman what purported to be a § 6020(b) return for each of 1999, 2000, and 2001 ("purported § 6020(b) return").  Each purported § 6020(b) return was comprised of what purported to be a § 6020(b) Certification—IRS Form 13496—over the signature of R.A. Mosca ("purported Certification"), followed by the contents of the SFRs, including IRS Form 4549A.  A genuine copy of each of the three (3) purported § 6020(b) returns, and of the purported Certification to which each was appended, is attached hereto as composite **Exhibit O**.

35.    Each of the purported § 6020(b) returns that was prepared by R.A. Mosca was invalid because neither she, nor the SB/SE Division itself, had been given instructions by the Secretary or by the Commissioner as to whether Mr. Tinnerman was required to file a return with respect to any of the "Adjustments to Income"—including non-reviewable stock basis amounts (*see* ¶ 33 above)—that were set forth in the purported §6020(b) return based upon the corresponding SFR.

36.    In addition to the allegation in ¶ 35 above, the purported Certification for each of the purported § 6020(b) returns was invalid, on its face, for at least three reasons:

10

(i)      the date of the purported Certification—February 5, 2004—is *earlier* than the date of the SFR and the other documents that it purports to certify, which together comprised the substance of the purported § 6020(b) return—February 20, 2004 (*see* ¶ 28 above). *See* Notice CC-2007-005 (the Forms 4549 and 866A "must be generated on or before the date the Form 13496 was signed.");

(ii)      the purported Certification failed to attach the documents that were listed thereon (and also failed to list thereon the documents that, in fact, were attached to it). Therefore, R.A. Mosca could not have "adopted the document as a return for the taxpayer" as required by Treas. Reg. § 301.6020-1(b)(2), and the purported § 6020(b) returns therefore were not "good and sufficient for all legal purposes" or to be treated as "the return filed by the taxpayer" per Treas. Reg. § 301.6020-1(b)(3); and

(iii)      R.A. Mosca had no delegated authority to issue § 6020(b) returns or to sign a § 6020(b) Certification.

Therefore, the IRS was not authorized to assess the taxes, or the § 6651(a)(1) and § 6651(a)(2) penalties, that were asserted in each of the incorrect SFRs and in each of the purported § 6020(b) returns.

37.    In addition to the allegations set forth in ¶¶ 34, 35, and 36 above, the purported § 6020(b) returns were invalid because they were inconsistent with the regulation at 26 CFR § 601.104(a), which provides that "an internal revenue tax assessment is based on a return required by law or regulations to be filed by the taxpayer …."[5]  This regulatory requirement is what triggers both the IRM 4.12.1 "Nonfiled Returns" procedure ("to deal with taxpayers who do

---

[5]  *See* § 6211(a) (defining "deficiency" as being computed in part from "the amount shown as the tax by the taxpayer upon his return") and § 6211(b)(3) (allowing tax computation of Secretary to be considered "as having been made by the taxpayer" and "shown by the taxpayer upon his return" in the circumstance where the taxpayer so elects, in accordance with § 6014).

not file required tax returns," 4.12.1.1) and the related IRM 5.1.11 "Return Delinquency Program" collection policy (compliance check of "all required IMF and BMF returns…," 5.1.11.3.3 (06-02-2004)).  The IRS ignored both that procedure and that policy.

38.     Thereafter, on July 9, 2004, the IRS issued a document purporting to be a § 6212 statutory notice of deficiency for each of 1999, 2000, and 2001, and on January 7, 2005, the IRS issued a document purporting to be a § 6212 statutory notice of deficiency for 2002 ("purported NODs").  A genuine copy of each of the two (2) purported NODs is attached hereto as composite **Exhibit P.**

39.     Each of the purported NODs likewise was invalid because, as described in ¶¶ 33-37 above, it was based exclusively on one or more incorrect SFRs and invalid § 6020(b) returns.

40.     Given that the amounts that are explained by Mr. Tinnerman in his Protest Letters 1999-2002, *see* ¶ 26 above, were identical in source and character to the amounts for 2010, 2011, 2013 and 2014 that the IRS subsequently determined to be tax-exempt and without requirement by statute or regulation to file an IRS Form 1040 return (*see* ¶¶ 15, 18 and 24), the IRS had no authority:

       (a)   to prepare or issue the SFRs for 1999, 2000, 2001 and 2002;

       (b)   to prepare or issue the purported § 6020(b) returns for 1999, 2000, 2001 and 2002 that were based on those SFRs;

       (c)   to issue and mail purported NODs for 1999, 2000, 2001, and 2002 that were based on those purported § 6020(b) returns; or

       (d)   to deny Mr. Tinnerman's appeal/rebuttal request.

41.     Each of the purported NODs was invalid because it was based upon a purported § 6020(b) return that, itself, was invalid because no return was required to be filed for that year.

The IRS had no factual or legal grounds for preparing SFRs or § 6020(b) returns that were not required to be filed, and groundless, unsigned SFRs and invalid § 6020(b) returns do not give rise to a tax liability.

42.     The IRS failed to carry out its statutory examination duty, both (i) under P.L. 105-206, 112 Stat. 727 and 771, Title III, Taxpayer Protection and Rights, §§ 3001(c) and 3504 (July 22, 1998), and (ii) as noted in the IRS Publication No. 1, to protect Mr. Tinnerman's right to pay only what is due, and to provide notice of his full administrative remedies under the law. *See* 26 U.S.C. § 7803(a)(2)(A) and (a)(3)(A), (C), and (E).

43.     The IRS's denial of Mr. Tinnerman's repeated requests for an administrative appeal and for a hearing in which to contest all the above prevented Mr. Tinnerman from availing himself of the avenue of redress in federal district court under the judicial review procedures of the APA.

44.     By way of the purported NODs, and by denying Mr. Tinnerman the opportunity to obtain an administrative determination that was judicially reviewable under the APA, the IRS informed Mr. Tinnerman—incorrectly—that the only means available to Mr. Tinnerman to challenge the validity of the NODs was to petition the United States Tax Court.

45.     However, because the purported § 6020(b) returns and the purported NODs, all were invalid (*see* ¶¶ 33-41), Mr. Tinnerman's timely-filed petitions to the United States Tax Court—which gave rise to the judgment ("Deficiency Judgment") in the consolidated case *Tinnerman v. Commissioner*, T.C. Memo. 2006-250, 2006 WL 3299074 (November 14, 2006) ("Tax Court Deficiency Case")—necessarily also were invalid, moot, and void.

46.     The Tax Court lacked subject matter jurisdiction over the Tax Court Deficiency Case because its jurisdiction would have been based exclusively (i) on purported notices of

deficiency that were invalid, and (ii) on the IRS's denial of Mr. Tinnerman's constitutional rights and rights under statutory law. Therefore, the Deficiency Judgment is void and must be set aside.

47.     As a matter of law, the United States Tax Court never has subject matter jurisdiction to adjudicate a statutory notice of deficiency for any year for which no return is required to be filed.  *See* § 6211 *et seq.,* 26 CFR § 601.104(a).  Only a valid statutory (and statutorily-compliant) notice of deficiency can provide the necessary foundation on which a petition to the Tax Court for a redetermination—and the Tax Court's jurisdiction to review it— must be based.[6]

48.     The Deficiency Judgment ostensibly resulted in an assessment, which, in turn, ostensibly gave rise to a lien in favor of the United States, and which, in turn, led to the IRS's November 6, 2007 recording of a Notice of Federal Tax Lien ("NFTL"), a genuine copy of which is attached hereto as **Exhibit Q.**  Mr. Tinnerman did not appeal the Deficiency Judgment.

49.     However, there never occurred a valid assessment of any of the taxes or other amounts on which were based (i) the SFRs, (iii) the NODs, (iv) the petitions to the Tax Court, or (v) the Deficiency Judgment.  In the absence of any valid assessments, all efforts by the IRS to collect any such taxes or other amounts—including, but not limited to, the recording of the NFTL—were unauthorized, and should be declared to be invalid, void, and of no force or effect, as a matter of law.

50.     In such instance, any administrative attempt by the IRS (i) to impose taxes, (ii) to collect taxes (including via the recording of an NFTL), (iii) to refuse to return sums erroneously

---

[6]   *See, e.g., In re Wood,* 328 BR 880, 890 (S.D. Fla. Bk Crt. 2005) and cases cited ("The Tax Court's jurisdiction to determine the amount of a deficiency depends upon the issuance of a valid notice of deficiency and a timely filed petition."); *Martin v. CIR,* 436 F. 3d 1216, 1226 (10th Cir. 2006) (same); *Elings v. CIR,* 324 F. 3d 1110, 1112 (9th Cir. 2003) ("The tax court's jurisdiction depends upon the validity of the notice.")

paid (or collected) as taxes, or (iv) to deny a rebuttal appeal of any such attempt, is an administrative abridgment of, and an infringement on, individual Constitutional rights. Such an administrative attempt (i) lacks notice, statutory or otherwise,[7] (ii) presumes to reconfigure Schedule K-1s without first having challenged those forms or the part(ies) that issued them,[8] (iii) circumvents the process that is prescribed by statute for assessments that give rise to a debt to the United States, (iv) imposes prohibitively onerous penalties, fines and interest,[9] and (v) creates, and indeed encourages, inconsistency of tax treatment. The outcome is an unlawful federal exaction. *See* 26 CFR § 601.106(f)(1).

51.     None of the steps in the examination process or in the ensuing assessment process was valid.  Moreover, many of those steps were fraudulent in that the IRS had knowledge of certain previously issued regulations and instructions to staff that directly contradicted these steps. When the IRS agreed with Mr. Tinnerman's position in subsequent and separate determinations, it in effect admitted the fraud.

52.     The APA at § 702 requires judicial review of certain administrative acts, or failures to act, by the IRS SB/SE Division that constituted legal wrongs against Mr. Tinnerman, including (i) its denial of Mr. Tinnerman's request for an administrative appeal, (ii) the failure to disclose to Mr. Tinnerman every one of the due process recourses to which he was entitled, and (iii) its preparation and issuance of SFRs, purported § 6020(b) returns, and purported NODs for

---

[7] Notice is a key component of due process of law, guaranteed by the Fifth Amendment to the Constitution.

[8] Civil liberties are protections against the arbitrary or oppressive acts of government. *See* Brennan, Wm. J., Jr., "Why Have a Bill of Rights?" Oxford Journal of Legal Studies, Vol. 9, No. 4, p. 425 (Oxford Univ. Press 1989). "The touchstone of due process is protection of the individual against arbitrary action of government."  *Dent v. West Virginia,* 129 U.S. 114 123 (1889).

[9] The Eighth Amendment guarantees freedom from excessive government fines.

years for which no returns were required—either by statute or by regulation—to be filed. Mr. Tinnerman seeks review as well as the equitable relief that is provided by APA § 706.

**SECOND CLAIM FOR RELIEF**

**(Reversal of Erroneous Certification of Seriously Delinquent Tax Debt)**

53.     Mr. Tinnerman realleges and incorporates by reference, as if fully set forth under this Second Claim, all the allegations of fact that are set forth above, and alleges further as follows:

54.     According to § 7345(a), "If the Secretary receives certification by the [Commissioner] that an individual has a seriously delinquent tax debt, the Secretary shall transmit such certification to the Secretary of State for action with respect to denial, revocation, or limitation of a passport pursuant to section 32101 of the FAST Act."

55.     Section 7345(c)(1) provides that "the Commissioner shall notify the Secretary (and the Secretary shall subsequently notify the Secretary of State) if such certification is found to be erroneous or if the debt certified is fully satisfied (or is not seriously delinquent due to various exceptions in subsection (b)(2) not relevant here).

56.     That notification reversing the certification must be made promptly:

(a)     "In the case of a debt that has been fully satisfied or has become legally unenforceable, such notification shall be made not later than the date required for issuing the certificate of release of lien with respect to such debt under section 6325(a)," § 7345(c)(2)(A); and

(b)     "In the case of a certification found to be erroneous, such notification shall be made as soon as practicable after such finding," § 7345(c)(2)(D).

57.     If a civil action is brought for reversal of the certification in accordance with § 7345(e)(1), that section authorizes the Court "to determine whether the certification was

erroneous or whether the Commissioner has failed to reverse the certification" and, upon a determination "that such certification was erroneous, then the court may order the Secretary to notify the Secretary of State that such certification was erroneous."

58.    As used in § 7345, the term "seriously delinquent tax debt" means an unpaid, *legally enforceable* Federal tax liability of an individual (i) that has been assessed, (ii) that is greater than $50,000, (iii) with respect to which, among other things, a notice of lien has been filed pursuant to § 6323, and (iv) the administrative rights under § 6320 with respect to such filing have been exhausted or have lapsed.

59.    A lien in favor of the United States upon all property and rights to property, whether real or personal, of a taxpayer, arises only at the time of the assessment and continues only until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time. §§ 6321 and 6322.

60.    The statute of limitations on collection of tax assessments is 10 years. § 6502.

61.    A lien is released either (i) by the Secretary, as a result of finding that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable from the passage of time (§ 6502), or (ii) automatically, by operation of § 6325(a)(1) and the Release Information on the face of the Notice of Federal Tax Lien itself. In either case, "such certificate [of release] shall be conclusive that the lien referred to in such certificate is extinguished." § 6325(f)(1)(A).

62.    The NFTL that had been recorded on November 6, 2007, by its terms, already constituted a Certificate of Release of NFTL. *See* Ex. A (Account Transcripts show by Transaction Code 583 that the lien was removed by October 20, 2017). Thus, the lien against Mr.

17

Tinnerman in favor of the United States was extinguished and became legally unenforceable as follows:

(a) pertaining to alleged taxes for 1999, 2000 and 2001, and penalties imposed for 1999, on May 23, 2017;

(b) pertaining to alleged taxes for 2002, on June 13, 2017;

(c) pertaining to civil penalties for 1996, 1997 and 1998, on October 4, 2017; and

(d) pertaining to civil penalties for 2002, on October 17, 2017.

63.     Despite these facts, the IRS sent to Mr. Tinnerman a notice of its certification to the State Department of Mr. Tinnerman's allegedly "seriously delinquent federal tax debt" for 1999, 2000, 2001 and 2002 entitled IRS Notice CP508C dated July 23, 2018 ("Notice of Certification"). A genuine copy of the Notice of Certification is attached hereto as **Exhibit R**.

64.     The Commissioner knew, at the time that he made it, that the certification referred to in the Notice of Certification was untimely, unauthorized and invalid.  A genuine copy of pages excerpted from each of Mr. Tinnerman's recent Account Transcripts for 1999, 2000, 2001, and 2002 ("Account Transcript Excerpts"), a genuine copy of which is attached hereto as **Exhibit S**, shows, on the last line of each, the words "Passport certified seriously delinquent tax debt 07-23-2018," just underneath the words "Removed lien 10-20-2017."

65.     There is no indication in the Notice of Certification that the certification was issued by the Commissioner or by anyone with duly delegated authority under § 7345(g).

66.     The certification that is described in the Notice of Certification described therein is erroneous, misleading, and damaging (and moot as a collection or enforcement tool) because,

(a)   it causes the Secretary of State to deny, revoke, or limit Mr. Tinnerman's passport and, therefore, his liberty,[10] which, under the circumstances here, is a deprivation without due process of law[11];

(b)   it is a blight on Mr. Tinnerman's reputation, both domestically and internationally (*see* discussion of nature of passport in *Haig v. Agee,* 453 U.S. 280, 293 (1981), in which the Supreme Court said, "As a travel control document, a passport is both proof of identity and proof of allegiance to the United States," 453 U.S. at 292-293);

(c)   the "seriously delinquent tax debt" that is alleged therein is not "legally enforceable," as § 7345(b)(1) states it must be, because, by the time the certification was sent to the Secretary of State,

(i)  the § 6502 collection limitation period had expired, and

(ii) the lien was extinguished; and

(d)   in accordance with § 7345(c)(2)(A), even if the certification had been timely—which it was not—the Commissioner would have been required by law promptly to notify the Secretary, and the Secretary would have been required by law promptly to notify the Secretary of State, once the debt had become legally unenforceable; but the certification was not timely, and therefore it issued without statutory authority.

---

[10]  *See* Ex. R, in which the IRS states, "The FAST Act generally prohibits the State Department from issuing or renewing a passport to a taxpayer with seriously delinquent tax debt." But, as the Supreme Court observed, practically, it is "the only means by which an American can lawfully leave the country or return to it." *Haig v. Agee,* 453 U.S. 280, 293 (1981).

[11] The Supreme Court stated that "[t]he right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 125 (1958). For a traveler who happens not to have a "REAL ID," but who is permitted in that instance by the Department of State to travel domestically with a passport (*see*   https://travel.state.gov/content/travel/en/News/passports/how-a-passport-can-help-you-fly-domestically.html) the lack of a passport also restricts *interstate* travel, which the Supreme Court recognized in *Griffin v. Breckenridge*, 403 U.S. 88, 105-106 (1971) is a constitutionally-protected right.

67.     The certification therefore must be reversed in accordance with § 7345(c)(1), at the earliest practicable moment in accordance with § 7345(c)(2)(D), and may be enjoined in accordance with Federal Rules of Civil Procedure, Rule 65(d).

### THIRD CLAIM FOR RELIEF

(Restitution - 1999)

68.     Mr. Tinnerman re-alleges and incorporates by reference, as if fully set forth under this Third Claim, every allegation set forth above.

69.     Mr. Tinnerman believed that he was not required to file a return for 1999 or 2000. Further, Mr. Tinnerman received no notice from the IRS that he was required to file for either year. Therefore, Mr. Tinnerman did not file an individual tax return for 1999 or for 2000 by the filing deadline.

70.     On June 21, 2013, the Company sent a letter ("June 21, 2013 Letter") to the IRS Service Center in Cincinnati, OH, in which it submitted for filing an Amended IRS Form 1120S for each of 1999, 2000, 2001, and 2002 ("Amended Corporate Returns").  That letter and its enclosures were delivered on July 1, 2013.  A genuine copy of the June 21, 2013 Letter, without attachments, and with proof of delivery, is attached hereto as **Exhibit T.**

71.     However, on November 12, 2015, the Company was made aware that the IRS had no record of the Amended Corporate Returns ever having been filed.   Based on this information, on December 4, 2015, the Company resubmitted for filing, by hand at the IRS's local office and under cover of a letter of the same date ("December 4, 2015 Letter"), the same Amended Corporate Returns as had been submitted for filing as described in ¶ 70 above.  A genuine copy of the December 4, 2015 Letter is attached hereto as **Exhibit U.** (On or about February 5, 2016, the IRS sent to the Company correspondence entitled LTR 544C ("IRS LTR 544C") in response to the December 4, 2015 Letter.  A genuine copy of the IRS Letter 544C is attached hereto as

Exhibit V.   The LTR 544C indicated that, based on the information that the Company had provided to the IRS, the IRS had corrected its accounts for 1999, 2000, 2001 and 2002.)

72.      On December 5, 2015, the Company issued to Mr. Tinnerman an amended Schedule K-1 that aligned with, and reflected, each of the Amended Corporate Returns.

73.      On December 30, 2015, Mr. Tinnerman filed by hand at the IRS's local office, an IRS Form 1040 for each of 1999, 2000, 2001 and 2002. The IRS Form 1040 for each of 2001 and 2002 showed a loss and showed no tax due.   The IRS Form 1040 for each of 1999 and 2000 showed taxable income and an amount due thereon, and Mr. Tinnerman fully paid those two amounts.  Attached as composite **Exhibit W** is a genuine copy of Mr. Tinnerman's check, his Form 1040, and the amended Schedule K-1 for 1999.  Attached as composite **Exhibit X** is a genuine copy of Mr. Tinnerman's check, his Form 1040, and the amended Schedule K-1 for 2000.

74.      By this time, however, Mr. Tinnerman already had received two of the four letters that he ultimately received from the IRS indicating that, under his circumstances of having received tax-exempt income, he did not have to file a return. *See* ¶¶ 15 and 18. Mr. Tinnerman relied on these IRS written determinations.

75.      So, on January 13, 2016—in accordance with the § 6037(c)(1) requirement that shareholders of an S corporation shall, on their returns, treat a Subchapter S item in a manner that is consistent with the treatment of that item on the S corporation's IRS Form 1120S and on the related Schedule(s) K-1—Mr. Tinnerman filed with the appropriate IRS Service Center an IRS Form 1040X for each of 1999 and 2000. A genuine copy of the IRS Form 1040X for 1999 is attached hereto as **Exhibit Y.** A genuine copy of the IRS Form 1040X for 2000 is attached hereto as **Exhibit Z.**

76.     The Form 1040X for 1999 showed as paid with the original Form 1040 the amount of $2,449.00 that Mr. Tinnerman erroneously had self-assessed and had paid for 1999, both as described in ¶ 73, above. The IRS Form 1040X for 1999 also showed a tax of $0.00, an overpayment of $2,449.00, and an election that the overpayment be refunded.

77.     All of Mr. Tinnerman's income and tax circumstances during 1999 were identical in source and character to those during 2010 and 2011, for both of which years, and under which circumstances, the IRS previously had determined that Mr. Tinnerman's income was tax exempt and he was not required to file an IRS Form 1040.

78.     Nevertheless, the IRS treated 1999 inconsistently with those other years, and failed or refused to return to Mr. Tinnerman the amount of $2,449.00 that he requested in his IRS Form 1040X for 1999.

79.     The IRS never issued a Notice of Claim Disallowance pertaining to Mr. Tinnerman's IRS Form 1040X for 1999.

80.     Since Mr. Tinnerman owed no tax and was not required to file a return for 1999, the $2,449.00 that he paid to the IRS did not constitute taxes owed and must be restored to him with interest as allowed by law

### FOURTH CLAIM FOR RELIEF

#### (Restitution – 2000)

81.     Mr. Tinnerman re-alleges and incorporates by reference, as if fully set forth under this Fourth Claim, every allegation set forth above.

82.     The Form 1040X for 2000 showed as paid with the original Form 1040 the amount of $2,629.00 that Mr. Tinnerman erroneously had self-assessed and had paid for 2000, both as described in ¶ 73, above. The IRS Form 1040X for 2000 also showed a tax of $0.00, an overpayment of $2,629.00, and an election that the overpayment be refunded.

83.     All of Mr. Tinnerman's income and tax circumstances during 2000 were identical in source and character to those during 2010 and 2011, for both of which years, and under which circumstances, the IRS previously had determined that Mr. Tinnerman's income was tax exempt and he was not required to file an IRS Form 1040.

84.     Nevertheless, the IRS treated 2000 inconsistently with those other years, and failed or refused to return to Mr. Tinnerman the amount of $2,629.00 that he had requested in his IRS 1040X for 2000.

85.     The IRS never issued a Notice of Claim Disallowance pertaining to Mr. Tinnerman's IRS Form 1040X Amended Return for 2000.

86.     Since Mr. Tinnerman owed no tax and was not required to file a return for 2000, the $2,629.00 that he paid to the IRS did not constitute taxes owed, and must be restored to him, with interest as allowed by law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Mr. Tinnerman requests the following relief:

**As to the First Claim, in accordance with APA § 706:**

a)     An order declaring unlawful, and setting aside, the Agency Action on the grounds that the Agency Action (A) was not in accordance with law, (B) was contrary to Mr. Tinnerman's constitutional rights, (C) was in excess of statutory jurisdiction, authority, and limitations, and (D) was without observance of procedure required by law;

b)     An order (i) declaring that the U.S. Tax Court lacked subject matter jurisdiction over Mr. Tinnerman's petitions to that Court or over the invalid NODs that gave rise to the Tax Court Deficiency Case, and (ii) declaring, therefore, that the Deficiency Judgment is void.

c)      Judgment awarding Mr. Tinnerman an amount equal to Mr. Tinnerman's reasonable attorneys' fees and costs incurred in this lawsuit;

**As to the Second Claim:**

d)      A determination that the Certification was erroneous;

e)      Injunctive relief in accordance with Federal Rules of Civil Procedure, Rule 65(d), including an order commanding the Commissioner[12] to notify the Secretary that the Certification was erroneous, and an order commanding the Secretary to notify the Secretary of State that the Certification was erroneous;

Judgment awarding Mr. Tinnerman an amount equal to Mr. Tinnerman's reasonable attorneys' fees and costs incurred in the prosecution of this Claim, as allowed by law;

**As to the Third Claim:**

f)      Judgment requiring the IRS to pay to Mr. Tinnerman $2,449.00, plus interest thereon as allowed by law, as restitution of sums erroneously assessed and collected from Mr. Tinnerman as tax for 1999;

**As to the Fourth Claim:**

g)      Judgment requiring the IRS to pay to Mr. Tinnerman $2,629.00, plus interest thereon as allowed by law, as restitution of sums erroneously assessed and collected from Mr. Tinnerman as tax for 2000; and

**As to all Claims:**

h)      Such other and further relief as the Court deems proper and equitable.

---

[12] Or duly-delegated IRS personnel pursuant to § 7345(g), which provides, "A certification under subsection (a) or reversal of certification under subsection (c) may only be delegated by the [Commissioner] to the Deputy Commissioner for Services and Enforcement, or the Commissioner of an operating division, of the Internal Revenue Service."

## <u>DEMAND FOR JURY TRIAL</u>

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Tinnerman, by his undersigned counsel, hereby demands a jury trial on all issues in every Claim that are triable by a jury.

UPCHURCH, BAILEY AND UPCHURCH, P.A.

By: <u>/s/ Donald W. Wallis</u>
     Donald W. Wallis
     Florida Bar No. 188668
     <u>dwallis@ubulaw.com</u>
     Post Office Drawer 3007
     St. Augustine, Florida 32085-3007
     Telephone No. (904) 829-9066
     Facsimile No. (904) 825-4862
     Attorney for Mr. Tinnerman William R. Tinnerman

**ADDENDUM A**

**EXHIBIT LIST**

| EXHIBIT | DESCRIPTION | PAGE NUMBER | ¶ NUMBER |
|---------|-------------|-------------|----------|
| A | Account Transcripts 2003-2015 | 4 | 11 |
| B | Notice CP59 for 2010 | 5 | 13 |
| C | Plaintiff's Letter/2010 | 5 | 14 |
| D | IRS Letter/2010 | 5 | 15 |
| E | Plaintiffs Letter/2011 | 6 | 17 |
| F | IRS Notice/2011 | 6 | 18 |
| G | Notice CP59 for 2014 | 7 | 20 |
| H | Plaintiffs Letter/2014 | 7 | 21 |
| I | IRS Letter/2013-2015 | 7-8 | 22 |
| J | Plaintiffs Letter/2013-2015 | 8 | 23 |
| K | IRS Letter/2013/2014 | 8 | 24 |
| L | Protest Letters 1999-2002 | 8-9 | 26 |
| M | Hearing Denial 1999-2002 | 9 | 27 |
| N | IRS Form 870-AD | 10 | 33 |
| O | Certifications and purported 6020(b) returns | 10 | 34 |
| P | purported NODs/1999-2001 and 2002 | 12 | 38 |
| Q | NFTL | 14 | 48 |
| R | Notice of Certification | 18 | 63 |
| S | Account Transcript Excerpts/1999-2001 | 18 | 64 |
| T | June 21,2013 Letter | 20 | 70 |
| U | December 4, 2015 Letter | 20 | 71 |
| V | IRS LTR 544C | 20-21 | 71 |
| W | IRS Form 1040 for 1999 | 21 | 73 |
| X | IRS Form 1040 for 2000 | 21 | 73 |
| Y | IRS Form 1040X for 1999 | 21 | 75 |
| Z | IRS Form 1040X for 2000 | 21 | 75 |

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, I electronically filed the foregoing FIRST

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL; INJUNCTIVE RELIEF

SOUGHT with the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to the following:

> Elizabeth N. Duncan
> Trial Attorney, Tax Division
> U.S. Department of Justice
> P.O. Box 14198
> Washington, D.C.  20044
> 202-514-6546 (v)
> 202-514-4963 (f)
> Elizabeth.N.Duncan@usdoj.gov

*/s/ Donald W. Wallis*
DONALD W. WALLIS
Counsel for Plaintiff